## Commonwealth vs. Peterson Charles.

Plymouth. December 8, 2009. - March 26, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Controlled Substances. Evidence,* Certificate of drug analysis. *Constitutional Law,* Confrontation of witnesses, Harmless error. *Error, Harmless. Practice, Criminal,* Confrontation of witnesses, Harmless error.

Complaint received and sworn to in the Brockton Division of the District Court Department on May 13, 2004.

The case was tried before *Paul J. McCallum*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jennifer J. Cox* for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

The following submitted briefs for amici curiae:

*Debra S. Krupp*, Committee for Public Counsel Services, for Committee for Public Counsel Services.

*Todd C. Pomerleau, Danielle M. Wood, & Sarah M. Unger* for Pomerleau Wood LLP.

*Kathryn Hayne Barnwell* for John Dessources.

Marshall, C.J. Resolution of this case is governed in sub-

stantial part by our decision issued today in *Commonwealth* v. *Vasquez*, *ante* 350 (2010) (*Vasquez*). The defendant was convicted by a District Court jury of possession of a class B substance (cocaine) with intent to distribute, G. L. c. 94C, § 32A; possession of a class D substance (marijuana) with intent to distribute, G. L. c. 94C, § 32C; and committing a drug offense within a school zone, G. L. c. 94C, § 32J. At trial, the Commonwealth submitted in evidence, without objection, three State laboratory certificates of drug analysis (drug certificates) of the substances possessed by the defendant.[1] The case was tried after our decision in *Commonwealth* v. *Verde*, 444 Mass. 279 (2005) (*Verde*), and before the United States Supreme Court issued *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532 (2009) (*Melendez-Diaz*), abrogating our decision in the *Verde* case. In an unpublished memorandum and order issued pursuant to its rule 1:28, the Appeals Court affirmed. *Commonwealth* v. *Charles*, 74 Mass. App. Ct. 1113 (2009). We granted the defendant's application for further appellate review, limited to the application of *Melendez-Diaz* to the defendant's confrontation clause claim.[2] We now reverse the judgments, set aside the verdicts, and remand the cases for a new trial.[3]

1. *Facts.* We summarize the relevant facts as they properly could have been found by the jury. At around 2:20 A.M. on May 13, 2004, Officers Edward Cruickshank and Jim Barude of the Brockton police department responded to a passing motorist's report of a fight at a nearby gasoline station, where they

---

[1]Each drug certificate was prepared as a notarized affidavit, signed by an assistant analyst at the State Laboratory Institute of the Department of Public Health. One drug certificate "certif[ied]" that the substance in eight plastic bags submitted to the State laboratory by a Brockton police detective was "Cocaine, a derivative of Coca leaves, as defined in Chapter 94C." The other two drug certificates "certif[ied]" that substances in other bags submitted by the police were "Marijuana, as defined in Chapter 94C." The drug certificates also bore the following legend: "When properly executed, [this certificate] *shall be prima facie evidence of the composition, quality, and the net weight of the narcotic or other drug*, poison, medicine, or chemical analyzed . . ." (emphasis added).

[2]The defendant was also convicted of resisting arrest, G. L. c. 268, § 32B, but this conviction is not before us.

[3]We acknowledge the amicus briefs filed on behalf of the defendant by the Committee for Public Counsel Services, Pomerleau Wood LLP, and John Dessources.

saw the defendant arguing with another man. After seeing the approaching cruiser, the defendant walked toward a parked automobile and then sat in its driver's seat; another man was sitting in the passenger seat. The officers, together with Sergeant Paul Binnaca, who had just arrived at the scene, approached the vehicle. After the defendant refused to comply with orders to keep his hands visible, Officer Cruickshank opened the driver side door, "grabbed" the defendant's arm, and began to remove the defendant from the vehicle. At that point, both Officer Cruickshank and Sergeant Binnaca saw the defendant reach into his waistband, remove a plastic bag, and throw it over his shoulder into the back seat. Officer Cruickshank then pulled the defendant out of the automobile. After the officers had hand-cuffed the defendant, Sergeant Binnaca retrieved the bag and told Officer Cruickshank that there were narcotics in the vehicle.

At trial, evidence apart from the drug certificates pertaining to the chemical nature of the substances recovered from the automobile consisted in its entirety in the following testimony of Officer Cruickshank and Sergeant Binnaca. Officer Cruick-shank, who had been a police officer for seven years, and through whom all three drug certificates were admitted in evidence, described the bag the defendant had thrown into the rear seat as containing "[e]ight pieces of crack cocaine" and six smaller bags of "a green leafy substance believed to be marijuana." He testi-fied that he found a bag containing "22.5 grams of marijuana" in the vehicle's center console. He later referred to the substances as the "suspected marijuana and the crack cocaine," and as a "green leafy substance" and "a white, rock-like substance" that, in ap-parent reference to the drug certificates, were "found to be" marijuana and crack cocaine, respectively. See note 1, *supra.*

Sergeant Binnaca, who testified that he had worked as a police officer for twelve years and had previously made drug arrests in the area near the gasoline station, testified that the bag the defendant had thrown into the rear seat of the vehicle contained a "green leafy substance" that in his "estimation" and "experience ap-peared to be marijuana." He later described the bag as containing "a green leafy substance, marijuana," and numerous "pieces of an off-white, hard, rock-like substance . . . known to me as — as possibly crack cocaine." The defendant did not object to the

officers' testimony regarding the substances. There was no other testimony concerning the chemical composition, appearance, odor, feel, or other qualities of the substances.[4]

2. *Discussion.* The Commonwealth correctly recognizes that the submission in evidence of the three drug certificates without the trial testimony of the analysts who signed the drug certificates violated the defendant's right of confrontation as guaranteed by the Sixth Amendment to the United States Constitution. See *Melendez-Diaz, supra.* Although the defendant did not object at trial to the admission of the drug certificates, for the reasons explained in *Vasquez, supra* at 355-360, we must determine whether the error was harmless beyond a reasonable doubt. For the reasons stated below, under our established law, which we recently discussed at length in *Commonwealth v. Tyree,* 455 Mass. 676, 700-704 (2010), and in *Vasquez, supra* at 360-368, we are not satisfied beyond a reasonable doubt that the drug certificates "did not have an effect on the jury and did not contribute to the jury's verdicts." *Commonwealth v. Tyree, supra* at 701.

As the Commonwealth has conceded, the drug certificates, introduced as part of the prosecution's prima facie case, provided, in the words of the assistant district attorney on appeal, the "most powerful evidence" that the substances at issue were "cocaine" and "marijuana," proof of which was necessary to establish that the defendant had committed the crimes of which he was charged. See *Commonwealth v. Farley,* 443 Mass. 740, 745 (2005) (Commonwealth must prove "each" and "every" element of crime beyond reasonable doubt); *Commonwealth v. McGilvery,* 74 Mass. App. Ct. 508, 511 (2009) (proof "that a substance is a particular drug" is element of drug prosecutions). The judge did not give the jury a standard instruction that drug certificates are prima facie evidence of the identity of the substances, but the drug certificates, which the jury could review, stated as much. See note 1, *supra.*

Proof that a substance is a particular drug "may be made by

---

[4]An additional witness, Detective Thomas Keating, who was not involved in the arrest or investigation, testified that, on the basis of hypothetical questions describing what the officers had seized, the quantity and packaging style of the alleged narcotics suggested distribution. He did not evaluate the substances recovered from the vehicle or offer any testimony as to their chemical composition.

circumstantial evidence," *Commonwealth* v. *Dawson*, 399 Mass. 465, 467 (1987), and in some circumstances not present here such evidence may be "so powerful" as to "nullify any effect" that the drug certificates "might have had on the jury or the verdict[s]." *Commonwealth* v. *Tyree*, *supra* at 704 n.44, quoting *Commonwealth* v. *Dagraca*, 447 Mass. 546, 555 (2006). Here, however, the arresting police officers, neither of whom was qualified as an expert in or had specialized training or experience in narcotics identification, offered only conclusory, and largely equivocal, testimony regarding the composition of the substances. The officers certainly "did not articulate how their expertise permitted them to identify the substances" as cocaine and marijuana. *Commonwealth* v. *Melendez-Diaz*, 76 Mass. App. Ct. 229, 233 (2010). Moreover, the judge did not make a finding that either officer's experience permitted him to offer an opinion that the substances were particular narcotics. See *Commonwealth* v. *Dawson*, *supra* (when police or drug-user witness testifies as to nature of substance, trial judge "will first have to make a finding" that witness's experience with drug would "permit him to give an opinion as to what drug a particular substance was"). See also *Vasquez*, *supra* at 365. There was no evidence that the officers detected any identifiable odors or recognized any other distinguishing characteristics of the substances beyond their appearance. See *Commonwealth* v. *Dawson*, *supra* ("it would be a rare case in which a witness's statement that a particular substance looked like a controlled substance would alone be sufficient to support a conviction").[5] Officer Cruickshank testified that he did not see any drug transaction occur, nor did he recall finding any money, cellular telephones, or pagers on the defendant. There was no mention of drugs in the report of the fight at the gasoline station to which the officers responded.

There was, of course, evidence probative of some wrongdoing on the part of the defendant or of consciousness of guilt. The defendant was engaged in an argument in the middle of the night in an area known for drug dealing. There was evidence that the

---

[5]Protocols for the analysis of cocaine, heroin, and marijuana samples promulgated by the State police require that a chemical analysis be conducted for each substance; identification of the substance is not authorized on the basis of a visual inspection alone.

substances seized from the automobile were packaged in a manner consistent with drug distribution, as Detective Keating testified. See note 4, *supra.* Moreover, when confronted by police, in addition to attempting to discard a plastic bag containing some substances, the defendant was uncooperative when the officers ordered him to keep his hands visible and attempted to escape from the police cruiser after his arrest. See note 2, *supra*; *Commonwealth* v. *Oeun Lam*, 420 Mass. 615, 617 (1995), and cases cited ("Evidence of escape or attempted escape is admissible to prove consciousness of guilt"). Such evidence did not, however, relieve the Commonwealth from proving beyond a reasonable doubt that the substances were, in fact, particular illegal narcotics, i.e., cocaine and marijuana. See *Commonwealth* v. *Farley*, *supra*; *Commonwealth* v. *McGilvery*, *supra.* Taken separately or together, the police officers' testimony is not "so powerful" as to "nullify any effect" that the drug certificates "might have had" on the jury or the verdicts. *Commonwealth* v. *Tyree*, *supra.*

We reject the Commonwealth's argument that the defendant "tacitly stipulated" to the nature of the substances and that reversal is not required because the nature of the substances was not a "live issue" at trial. Defense counsel did refer to the substances as "drugs" in his opening statement; in questioning witnesses and in his summation he referred to the substances as "marijuana" and "crack cocaine." He also encouraged the jury to return verdicts of guilty on the lesser included offenses of simple possession. The defendant did not, however, stipulate to the composition of the substances. See *Melendez-Diaz, supra* at 2542 (defense attorneys and their clients "will often stipulate to the nature of the substance in the ordinary drug case"). Although the defendant did not contest that the substances were drugs, the "defendant's theory of his case cannot relieve the Commonwealth of its burden of proving every element of a crime beyond a reasonable doubt." *Commonwealth* v. *Shea*, 398 Mass. 264, 269 (1986). Further, as we explained in *Vasquez, supra* at 368, by giving the defendant the benefit of the harmless beyond a reasonable doubt standard, as we have, "the defendant is effectively in the same position as if he *had* objected to the admission of the drug certificates. A defendant who objects to a Federal (or State) constitutional error that goes to the heart of the government's case has no further obligation, if he wishes to chal-

lenge that error on appeal, to contest the issue." (Emphasis in original.) This is not a case where the facts independent of the drug certificates overwhelmingly prove the nature of the substances recovered from the automobile. Contrast *Commonwealth v. Doherty*, 411 Mass. 95, 102 (1991), cert. denied, 502 U.S. 1094 (1992), quoting *Francis v. Franklin*, 471 U.S. 307, 325-326 (1985) (erroneous intent instruction harmless beyond reasonable doubt where "principals' intent was not in dispute" because facts " 'overwhelmingly preclude[d]' the absence of an intent to kill" on part of principals).

3. *Conclusion.* The judgments are reversed, the verdicts are set aside, and the cases are remanded to the District Court for a new trial consistent with this decision.

*So ordered.*


SPINA, J. (dissenting in part and concurring in part). I dissent and concur for the reasons previously stated in my separate opinion in *Commonwealth v. Vasquez, ante* 350, 374-377 (2010).