COMMONWEALTH *vs.* JOSEPH WALORZ.[1]

No. 07-P-1370.

Middlesex. May 14, 2010. - March 25, 2011.

Present: BERRY, GREEN, & RUBIN, JJ.

*Controlled Substances. Practice, Criminal,* Stipulation, Harmless error, Assistance of counsel. *Evidence,* Certificate of drug analysis. *Constitutional Law,* Harmless error, Assistance of counsel. *Error, Harmless. Search and Seizure,* Consent.

At a criminal trial, the judge properly treated as a stipulation a statement of evidence signed by the defendant prior to trial, which identified the substance that the defendant possessed as oxycodone and acknowledged that the defendant had possession of a box with the oxycodone in it [134-135]; further, there was no merit to the defendant's contention that his conviction was based solely on those stipulated facts [135-136].

At a criminal trial, the erroneous admission in evidence of a certificate of drug analysis in violation of the defendant's confrontation rights was harmless beyond a reasonable doubt, where the certificate played a reduced role in the premise of the defense, in light of other, properly admitted evidence, including the defendant's stipulation and trial testimony. [136-138] RUBIN, J., concurring.

At the trial of an indictment charging drug trafficking, there was sufficient evidence of the weight of the controlled substance at issue, as well as of the defendant's possession of the substance with the intent to distribute it. [138]

A Superior Court judge did not err in denying a criminal defendant's pretrial motion to suppress evidence found by police while executing a consent search of the defendant's household, where the defendant's girlfriend authorized a complete search of the residence, and where the evidence seized fell within the scope of the search. [139]

There was no merit to a criminal defendant's allegation that his trial counsel rendered ineffective assistance by failing to introduce certain expert testimony, where the testimony would have been merely cumulative of other evidence and would not have provided a substantial ground of defense. [139-140]

INDICTMENT found and returned in the Superior Court Department on July 31, 2003.

A pretrial motion to suppress evidence was heard by *Wendie*

---

[1]Also known as Stephen Cantone.

*I. Gershengorn,* J.; the case was heard by *Hiller B. Zobel,* J., and a motion for a new trial, filed on December 12, 2008, was also heard by him.

*Rosemary Curran Scapicchio (Dennis M. Toomey* with her) for the defendant.

*Alice E. Casey,* Assistant District Attorney, for the Commonwealth.

BERRY, J. After a jury-waived trial in the Superior Court, the defendant was convicted of trafficking in over twenty-eight grams of oxycodone. G. L. c. 94C, § 32E(c)(2). The defendant's direct appeal was consolidated with his appeal from the denial of his motion for new trial. The defendant argues that, notwithstanding his stipulation to the composition of the drugs, the admission of the certificate of drug analysis (drug certificate) was constitutional error, that the evidence was insufficient to convict him, that the motion judge erred in denying his motion to suppress, and that his trial counsel was ineffective. We affirm.

The following background facts, which we view, on the challenge to the sufficiency of the evidence, in the light most favorable to the Commonwealth, are taken from the trial evidence. *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). Federal customs agents, after discovering that a shipment from Brazil to a post office box in Everett contained 500 oxycodone pills, informed a United States postal inspector. The postal inspector, who testified at trial, removed between one-half and one-third of the pills from the package and resealed it. Shortly after the defendant picked up the package containing the remaining oxycodone, police officers arrested him. During his arrest, the defendant stated that he was not a user of oxycodone and that he could provide information concerning the identity of a drug supplier in Florida. With the consent of the defendant's girlfriend, with whom he lived, police conducted a search of the defendant's home. As a result of the search, the police found several incriminatory electronic mail messages (e-mails) and documents consistent with the defendant being a distributor of oxycodone.

At the trial, the defendant testified and admitted that he placed the order for the oxycodone, and further acknowledged that he knew what was in the package when he picked it up, answering "[y]es" to the question "that on that date, April 4, that you

were in Everett, Massachusetts, and went to a Mail Box[es] Etc. and retrieved a package that you expected there be 500 Oxycontin, 40 milligram pills?" The defendant testified that he did not intend to sell the oxycodone, that he was addicted to oxycodone, and that the oxycodone was for his personal use.

1. *The stipulation regarding oxycodone.* Before the bench trial began, the Commonwealth drafted a statement of the evidence that it expected to present. Relevant to this appeal, the statement of the evidence included the following sentence: "The person who signed for and took possession of the box that contained the [o]xycodone was the defendant."

In reviewing the statement of the evidence, and before the trial began, the Superior Court judge said,

> "What I think makes sense at this point, which will take ten minutes to do, take a copy of a [Commonwealth's] statement of the case and strike out everything that's not be[ing] conceded and then [defense counsel] and [the defendant], and [the prosecutor] will sign that and that will be the evidence in the case. And, [defendant], you understand that once that's done that those facts will be the facts that are, if I can put it somewhat vigorously, cast in concrete. You won't be able to say afterwards, ['O]h no, those facts are wrong. If we had the detective on the stand testifying we would've been able to cross-examine and show that those facts, or those supposed facts, are not facts at all[.'] [Y]ou understand that you won't be able to do that?"

The defendant answered that he understood. The defendant, defense counsel, and the prosecutor signed the statement of the evidence, which, as noted above, identified the substance that the defendant possessed as oxycodone and acknowledged that the defendant had possession of the box with the oxycodone in it.

After the signing of the stipulation, the following items were introduced in evidence by the Commonwealth without objection: the written statement of facts (as signed and stipulated to by the defendant, defense counsel, and the prosecutor), the oxycodone, the drug certificate identifying the substance as oxycodone, and the package in which the oxycodone was shipped.

On appeal, the defendant argues that what he signed should

not be considered a stipulation because there was not a full colloquy conducted by the trial judge. The defendant also argues that in the interest of justice, the statement of evidence he signed should not be treated as a stipulation. Lastly, the defendant further submits that his conviction must be reversed because of constitutional error in the admission of the drug certificate. We address these points in turn.

The defendant's contention that the statement of evidence could not be a stipulation because there was not an adequate colloquy ignores the detailed explanation by the trial judge, the questions directed to the defendant about his understanding of what the effect of signing the document was, and the judge's explicit notice to the defendant that, upon the defendant's signing, the facts in the statement of evidence would be conceded and would be the accepted facts during trial. As the judge explained, "[T]hose facts will be the facts that are, if I can put it somewhat vigorously, cast in concrete," and, as the judge further explained, these conceded facts would not be subject to challenge. That the precise word "stipulation" was not used does not change the analysis. In all effects, this statement of facts signed prior to the commencement of trial was a stipulation that the substance was oxycodone and the defendant possessed the oxycodone. The stipulation of facts prior to trial is provided for in Mass.R.Crim.P. 11(a)(1)(D)(v), as then in effect, which states that "[a]mong those issues to be discussed at the pretrial conference are . . . (v) whether issues of fact can be resolved by stipulation."[2] That the stipulated statement in this case was signed by the defendant, defense counsel, and the prosecutor not at the earlier pretrial conference, but rather just before trial began, is a distinction without a difference.[3]

The defendant further argues that it would be contrary to the

[2]For cases such as this one, initiated before September 7, 2004, the provision of the rule is set forth at Mass.R.Crim.P. 11(a)(1)(D)(v). See 378 Mass. 862 (1979). For cases initiated on or after that date, the provision is now found at Mass.R.Crim.P. 11(a)(1)(C)(iv). See 442 Mass. 1509 (2001).

[3]To be noted, a limited statement of the evidence, such as was stipulated to in this case, is markedly different than what was at issue in *Commonwealth* v. *Castillo*, 66 Mass. App. Ct. 34 (2006). There was, in *Castillo*, a total stipulation of the entire case, with no evidence presented in that bench trial, and no colloquy at all. *Id.* at 36. That is not so here. First, this was not a wholesale stipulation of the entire case. Rather, the defendant stipulated only that the

interests of justice to sustain the conviction upon such stipulated facts. In support of this proposition, the defendant cites *Commonwealth* v. *Brown*, 55 Mass. App. Ct. 440, 448-449 (2002). In *Brown*, this court reversed a conviction from a trial on stipulated facts because there was no guilty plea colloquy, and the stipulated facts alone were sufficient to find the defendant guilty of the crime charged. *Ibid.* That is not true in this case. Unlike the defendant in *Brown*, the defendant here did not stipulate to all the essential elements of proof of the crime of trafficking. This was a limited stipulation. With respect to offense elements, the defendant stipulated only that the controlled substance was oxycodone and that he possessed the oxycodone.[4] By these two points of stipulation, the defendant did not admit to sufficient facts to sustain a conviction of trafficking in oxycodone. In fact, the stipulation was followed by three days of testimony in which the defendant challenged the Commonwealth's case and the charge of trafficking. Thus, unlike *Brown*, it cannot be said in this case that the defendant's "stipulation was tantamount to a guilty plea." *Id.* at 448.

The defendant also argues that the conviction should be reversed because the admission of the drug certificate violated

controlled substance was oxycodone and that he possessed the oxycodone. The defendant did not admit to all the offense elements and did not admit to sufficient facts to sustain a conviction of trafficking in oxycodone. Indeed, as noted, following the signing of the statement that stipulated to certain evidence, there were three days of trial testimony in which the defendant challenged the government's case and the charge of trafficking. Second, as described above, there was a colloquy by the judge in this case with the defendant and defense counsel. Because this was not a total "case stipulation" as in *Castillo*, the full colloquy outlined in *Castillo* was not required. See *id.* at 37. Rather, as noted above, this limited stipulation contained in the statement of evidence concerning the nature of the substance as oxycodone and the defendant's possession was more like a stipulation of certain facts prior to trial as provided for in Mass.R.Crim.P. 11(a)(1)(D)(v).

Furthermore, the defendant did not argue in the Superior Court that he was entitled to a colloquy more extensive than that which was given, or that the absence of a fuller colloquy rendered the stipulation invalid. On appellate review, we should not initiate, develop, and dispose of a case on a theory not raised by the defendant in the proceedings below. For these reasons, this colloquy on this limited stipulation was adequate.

[4]The defendant was indicted for, and was on trial for, trafficking in over twenty-eight grams of oxycodone. G. L. c. 94C, § 32E(*c*)(2). There was no stipulation to the elements of the offense of trafficking.

his confrontation rights. *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009). The question, then, is whether the defendant's stipulation, and other evidence, including the defendant's testimony, rendered the constitutional error in the admission of the drug certificate harmless beyond a reasonable doubt. *Commonwealth* v. *Vasquez*, 456 Mass. 350, 352 (2010). In reviewing whether an error is so harmless, it is the entire trial record, the prosecution and the defense case, that is to be considered. "[A]n appellate court must ask 'whether *on the totality of the record* before us, weighing the properly admitted and the improperly admitted evidence together, we are satisfied beyond a reasonable doubt that the tainted evidence did not have an effect on the [fact finder] and did not contribute to the [fact finder's findings]' " (emphasis added). *Id.* at 369 (Cordy, J., concurring), quoting from *Commonwealth* v. *Tyree*, 455 Mass. 676, 701 (2010). Various factors must be weighed, including, but not limited to, "the importance of the evidence in the prosecution's case; the relationship between the evidence and the premise of the defense; . . . [and] whether the erroneously admitted evidence was merely cumulative of properly admitted evidence." *Vasquez, supra* at 360 n.12, quoting from *Tyree, supra.*

Applying these standards, we conclude that given the defendant's stipulation and trial testimony that he possessed oxycodone, the error arising out of introduction of the drug certificate was harmless beyond a reasonable doubt. We note that in *Commonwealth* v. *Muniz*, 456 Mass. 166, 173 n.7 (2010), the Supreme Judicial Court indicated that a stipulation concerning what particular unlawful drug a controlled substance was would satisfy proof of this essential offence element: "*[A]bsent a stipulation*, the fact that the substance was cocaine was an essential element of the crime that the Commonwealth must prove beyond a reasonable doubt" (emphasis added).

Furthermore, given the defendant's stipulation, as well as the defendant's trial testimony, the admission of the drug certificate was cumulative of properly admitted evidence, and the introduction of the drug certificate had a reduced relationship to "the premise of the defense." *Vasquez, supra* at 360 n.12. That is to say, the premise of the defense was to stipulate that the substance was oxycodone and to contest that the defendant's possession

of the oxycodone was for distribution. Given the two stipulated facts, the trial contest between the prosecution and defense was centered on whether the defendant possessed the oxycodone with intent to distribute as the Commonwealth contended, or whether the defendant possessed the oxycodone for personal use. That defense theory was developed by the defendant's own testimony that the substance was oxycodone. So viewed, the drug certificate had a reduced role in the trial evidence, such that the error was harmless beyond a reasonable doubt.

2. *Sufficiency of the evidence.* The defendant contends that there was insufficient evidence as to the weight of the oxycodone, because the postal inspector had removed some of the pills before the defendant took possession of the oxycodone.

The postal inspector's testimony regarding precisely how many of the pills he removed was not uniformly consistent. At certain times during his testimony, the postal inspector referred to having removed just over one-half, just less than one-half, and as little as one-third of the pills. That removal does not affect the sufficiency of the evidence, because whether the postal inspector took one-third or one-half of the pills, enough pills remained to sustain the conviction. The weight of all 500 pills was 67.95 grams, and two-thirds of the pills, those remaining in the package when the defendant possessed it, would weigh 44.85 grams, well above the twenty-eight gram requirement. Further, even if only one-half of the oxycodone pills were in the package when the defendant took possession, the remaining one-half would have weighed approximately thirty-four grams, which also would be sufficient evidence to support the trafficking offense.

The defendant's argument that there was insufficient evidence to prove he possessed the pills with an intent to distribute is equally meritless. While the defendant testified at trial that he was an addict and used oxycodone, this was inconsistent with the defendant's statement at the time of his arrest that he was not a user. An expert witness, a police officer who appeared as part of the Commonwealth's case-in-chief, testified that 500 pills were a quantity not consistent with personal use, but rather were evidence that the defendant possessed the drugs with intent to distribute.[5]

---

[5]Similarly, the trial judge did not abuse his discretion in denying the defend-

3. *The motion to suppress.* The defendant contends that the police, while executing a consent search of the defendant's household, exceeded the scope of the consent given by the defendant's girlfriend. In the order denying the defendant's motion to suppress, the motion judge found that the girlfriend authorized "a complete search of [the] residence" and consented to the police taking "any letters, papers, materials, or other property, which is contraband or evidence [of] specifically drug trafficking." These findings were not clearly erroneous, and the evidence seized, which consisted of electronic mail messages printed from the defendant's computer, falls within the scope of the search. See *Commonwealth* v. *Hinds*, 437 Mass. 54, 60-62 (2002), cert. denied, 537 U.S. 1205 (2003).

4. *Ineffective assistance of counsel.* The defendant argues that trial counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Specifically, the defendant contends that in failing to obtain an expert witness to testify about addiction to oxycodone, trial counsel deprived the defendant of "an otherwise available, substantial ground of defence." *Ibid.*

The defense asserted at trial was that the defendant possessed the pills for personal use, not for distribution. In the cases cited by the defendant, expert testimony that defense counsel failed to obtain would have provided either a defense not pursued at trial, or substantial exculpatory evidence. See *Commonwealth* v. *Conley*, 43 Mass. App. Ct. 385, 395 (1997) (forensic testing of a knife, which could have exculpated the defendant, was not pursued by counsel); *Commonwealth* v. *Baran*, 74 Mass. App. Ct. 256, 274-278 (2009) (expert witness would have testified to how children are suggestible and may have fabricated charges of sexual assault by the defendant). Here, the testimony of an expert would have been merely cumulative of the cross-examination of the Commonwealth's expert, and would not have provided a substantial ground of defense. In addition, the trial judge, who denied the motion for a new trial, found that the proffered expert

---

ant's motion to reduce the verdict to simple possession, where the evidence was sufficient to support the trafficking conviction.

testimony would not have cast any "real doubt on the justice of the conviction."[6]

*Judgment affirmed.*

RUBIN, J. (concurring). I join the court's opinion in full on the understanding that the defendant's entry into the stipulation alone rendered the otherwise-unconstitutional admission of the certificate of drug analysis harmless beyond a reasonable doubt. See *Commonwealth* v. *Charles*, 456 Mass. 378, 383 (2010) (noting that the defendant did not stipulate to the composition of the drugs); *Commonwealth* v. *Vasquez*, 456 Mass. 350, 367 (2010) (same). Those certificates were introduced by the Commonwealth as part of its case-in-chief, not by the defense in its case. I do not read the court's references to the defendant's testimony to disturb our recent holding in *Commonwealth* v. *Mendes*, 78 Mass. App. Ct. 474, 480-481 (2010), by which we are bound, that "admissions coming in the form of the defendants' sworn testimony at trial" are no different from a defendant's admissions through words or conduct, and that they therefore can not "form the basis for concluding that the admission of [a drug] certificate[ of analysis] was harmless." *Id.* at 481, citing *Commonwealth* v. *Charles*, *supra* at 383, and *Commonwealth* v. *Fluellen*, 456 Mass. 517, 526-527 (2010).

---

[6]The defendant also argues, without reference to the transcript, that the police expert gave impermissible profile-based testimony that was unobjected to at trial. See *Commonwealth* v. *Johnson*, 76 Mass. App. Ct. 80, 85-86 (2010). However, the judge found that even without the police expert there was more than sufficient evidence to find that the defendant possessed the oxycodone with intent to distribute. There was no substantial risk of a miscarriage of justice.