## COMMONWEALTH *VS.* AARON RAMSEY.

No. 09-P-1848.

Hampden. December 10, 2010. - June 28, 2011.

Present: GRASSO, GREEN, & VUONO, JJ.

*Firearms. Controlled Substances. Constitutional Law,* Confrontation of witnesses, Harmless error. *Practice, Criminal,* Confrontation of witnesses, Harmless error. *Evidence,* Ballistician's certificate, Certificate of drug analysis. *Error, Harmless.*

At the trial of indictments charging, inter alia, unlawful possession of a firearm, the erroneous admission in evidence of a ballistics certificate, without affording the defendant an opportunity to cross-examine the ballistician who created it, was rendered harmless beyond a reasonable doubt by the other, lawfully-admitted evidence of operability of the firearm (i.e., in addition to the gun itself, security footage of the shooting depicting the discharge of multiple firearms; testimony from police officers that cartridge casings, including the one matching the gun in evidence, were retrieved from the crime scene; and opinion testimony from a police officer who was a ballistics expert that two spent casings found at the scene resulted from shots fired by the firearm in question). [726-728]

At the trial of indictments charging, inter alia, unlawful possession of cocaine, the erroneous admission in evidence of certificates of drug analysis to prove the chemical composition of the alleged cocaine, without affording the defendant an opportunity to cross-examine the analyst who created them, could not be said to have been harmless beyond a reasonable doubt, where the record contained virtually no evidence, aside from the certificates and the defendant's testimonial admissions, from which the jury independently could have inferred that the substances were cocaine. [728-730] GRASSO, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on February 2, 2007.

The cases were tried before *John A. Agostini,* J.

*Susan E. Taylor* for the defendant.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

VUONO, J. A Superior Court jury convicted the defendant of

unlawful possession of a firearm (G. L. c. 269, § 10[a]) and unlawful possession of cocaine. After the jury returned their verdicts, the defendant pleaded guilty to the enhanced sentence portion of the firearm indictment. See G. L. c. 269, § 10G(a). The sole issue on appeal is whether a new trial is required as a result of the erroneous admission in evidence of a ballistics certificate and certificates of analysis for the cocaine, each of which came in without testimony of the certifying official. See *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009) (*Melendez-Diaz*). For the reasons that follow, we affirm the defendant's conviction of possession of a firearm and reverse the conviction of possession of cocaine.

*Background.* The charges in this case arose from a shooting incident on January 1, 2007, at a restaurant in Springfield. At approximately 2:00 A.M., Springfield police officers were dispatched to the restaurant to investigate a report of gunshots fired. When they arrived, the police observed two people on the ground and another person, later identified as the defendant, hobbling away from the scene.[1] As the defendant was leaving, he discarded a handgun. The police quickly apprehended the defendant and later retrieved the gun, which had an empty magazine in it and no bullet in the chamber. Upon ascertaining that the defendant had been shot in the foot, the police transported him to the hospital where he received treatment for the wound. While he was at the hospital, medical personnel found two packets, one containing powder cocaine and the other containing "crack" cocaine, in the defendant's sock.

At trial, the defendant did not contest that the gun in question was a firearm as defined in G. L. c. 140, § 121. He did not object to the admission of the ballistics certificate so identifying it during the Commonwealth's case-in-chief. Instead, the defense was one of necessity.[2] The defendant testified that after the shooting began he saw the gun on a table and "grabbed" it so it

---

[1]At least three people, including the defendant, sustained gunshot wounds and one person died.

[2]Following closing arguments, trial counsel informed the judge that the defendant, after discussion with counsel, was requesting that the jury instructions "focus" on the defense of necessity and was "conced[ing] both possession of the gun, as well as the possession of the cocaine." In his final charge to the jury, the judge instructed on the elements of unlawful possession of a

could not be used against him or others. He claimed that he never fired the gun and did not know if the gun had been fired by someone else. To rebut the defendant's testimony, the Commonwealth presented evidence from a ballistics expert, Trooper John Schrijn. Although Trooper Schrijn was not the officer who signed the ballistics certificate, he testified that he had examined the firearm and identified it as a nine millimeter caliber Jennings model semiautomatic pistol. He explained that during police testing the firearm "was fired by use of [police] ammunition . . . for test specimens to be recovered from our water tank to be compared against . . . other recovered evidence in the [crime scene] area." Trooper Schrijn examined spent cartridge casings retrieved from the crime scene and compared them to the casings obtained during the test firing of the firearm and "positively identified" two nine millimeter empty cartridge casings found outside the restaurant on the sidewalk as having been discharged by the firearm in question. He further testified that his examination at the scene disclosed that at least two other firearms had been fired inside the restaurant.

The defendant, through counsel, also conceded "the possession of the cocaine" (see note 2, *supra*), and he identified the substances as crack cocaine and powder cocaine during his testimony. However, unlike with the firearm charge, he presented no defense to the drug charge.[3]

*Discussion.* Although there was no objection, the applicable standard of review is whether the erroneous admission of the certificates of drug and ballistics analysis was harmless beyond a reasonable doubt. *Commonwealth* v. *Vasquez,* 456 Mass. 350, 360

---

firearm and unlawful possession of a controlled substance — including the Commonwealth's burden of proving that the pistol met the legal definition of a firearm and that the substance seized from the defendant was, in fact, cocaine — but informed them that, as to each charge, "the parties have agreed that the Commonwealth has, in fact, satisfied beyond a reasonable doubt each and every one of these elements." Defense counsel did not object to the instructions.

[3] The reasoning behind the decision to concede all the elements of the cocaine possession charge is not apparent from the record. However, as we conclude that the defendant is entitled to a new trial on that charge as a result of the erroneous admission of the certificates of drug analysis, we have no reason to address what implications, if any, might arise from the defendant being "denuded of a defense." *Commonwealth* v. *Street,* 388 Mass. 281, 287 (1983).

(2010).[4] "[T]o establish harmlessness beyond a reasonable doubt, the Commonwealth must show that other properly admitted evidence of guilt is 'overwhelming,' in the sense that it is 'so powerful as to "nullify any effect" ' that the improperly admitted evidence 'might have had' on the fact finder or the findings." *Id.* at 362, quoting from *Commonwealth* v. *Tyree,* 455 Mass. 676, 704 n.44 (2010). In determining whether the Commonwealth has met its burden here, we do not consider the defendant's admissions made during his testimony. See *Commonwealth* v. *Mendes,* 78 Mass. App. Ct. 474, 480-481 (2010), further appellate review granted, 459 Mass. 1104 (2011) (holding that it is not "appropriate" in the harmless error analysis to rely on admissions made by a defendant during his testimony at trial, because the court "cannot know whether the . . . testimony was a response to the erroneous admission of the certificates and hence tainted by the error").[5]

1. *Ballistics certificate.* The Commonwealth introduced the erroneously admitted ballistics certificate as prima facie evidence that the pistol recovered by police met the statutory definition of a firearm, an essential element of the offense charged. See *Commonwealth* v. *Pittman,* 76 Mass. App. Ct. 905, 906 (2010). Despite the defendant's concession at trial that he had "possess[ed] the gun" (see note 2, *supra*), the Commonwealth agrees that it retained the ultimate burden of proving at trial that the pistol was operable.[6] It argues on appeal that other, lawfully admitted evidence of operability[7] was potent enough to render the admission of the ballistics certificate harmless beyond a reasonable doubt. We agree.

---

[4]The defendant's trial occurred after the decision in *Commonwealth* v. *Verde,* 444 Mass. 279 (2005), but before the issuance of the opinion in *Melendez-Diaz* by the United States Supreme Court. See *Vasquez,* 456 Mass. at 351, 357 n.8.

[5]In *Mendes,* the Commonwealth did not rely on rebuttal evidence. However, nothing in the reasoning of that case precludes our consideration of rebuttal evidence where offered by the Commonwealth.

[6]Although it characterizes the defendant's concession as a "stipulation," the Commonwealth expressly concedes in its brief that it retained the burden of proving each element of both charged offenses beyond a reasonable doubt with properly admitted evidence. For reasons discussed in more detail, *infra,* we accept the Commonwealth's concession in this regard.

[7]Barrel length, see G. L. c. 140, § 121, is not at issue in the appeal. See *Commonwealth* v. *Hollister,* 75 Mass. App. Ct. 729, 733 n.10 (2009).

During its case-in-chief and on rebuttal, the Commonwealth presented significant evidence — independent of the ballistics certificate — that the pistol met the statutory definition of a firearm. In addition to the gun itself, which the Commonwealth introduced as an exhibit, the jury were shown security footage from the shooting depicting the discharge of multiple firearms, and heard testimony from officers that numerous cartridge casings, including two matching the pistol in evidence, were retrieved from the crime scene. Based on the evidence, the jury could have comfortably concluded that the subject firearm was among those depicted being fired. See *Commonwealth* v. *Mendes,* 75 Mass. App. Ct. 390, 397 (2009) (independent evidence consisting of three audible shots, the recovery of three empty casings, and the smell of gunpowder rendered the admission of a ballistics certificate harmless beyond a reasonable doubt). Equally if not more compelling was Trooper Schrijn's testimony in rebuttal that the gun had been test fired in order to obtain spent casings for comparison with evidence retrieved from the crime scene, and his opinion that two of the spent casings found at the scene resulted from shots fired by the firearm in question. This independent testimony overwhelmingly supported the inference that the gun was capable of firing a bullet. Accord *Commonwealth* v. *Depina,* 456 Mass. 238, 249-251 (2010). Taken in combination, the quantity and quality of the lawfully admitted evidence satisfies us that it was sufficient to "nullify any effect" the erroneously admitted ballistics certificate "might have had." *Vasquez,* 456 Mass. at 362.

2. *Certificates of drug analysis.* Like the ballistics certificate discussed above, the Commonwealth introduced the erroneously admitted certificates of drug analysis to prove an essential element of a charged offense, the chemical composition of the alleged cocaine. In contrast to the firearm evidence, however, the record contains virtually no evidence, aside from the certificates and the defendant's testimonial admissions, from which the jury independently could have inferred that the substances found in the defendant's sock were cocaine. The arresting officer's conclusory observation that the substances retrieved from the defendant's sock at the hospital "appeared to be" crack and powder cocaine, upon which the Commonwealth principally relies, is

insufficient to show harmlessness beyond a reasonable doubt. See *Vasquez*, 456 Mass. at 365; *Commonwealth* v. *Charles*, 456 Mass. 378, 382 (2010). This court's recent decision in *Mendes*, 78 Mass. App. Ct. at 480-481, does not permit us to consider the defendant's testimonial admissions as substantive evidence of guilt in the harmless error analysis.[8] Accordingly, we are constrained to vacate the defendant's conviction of possession of cocaine.

The dissent posits that, despite the lack of independent evidence establishing the chemical composition of the alleged cocaine, we may affirm the defendant's drug conviction based on his concession at trial to "possession of the cocaine" and on the judge's communication of that concession to the jury. This concession, the dissent reasons, was part of an "obvious trial strategy . . . to give a little [the cocaine charge for which the defendant was facing a relatively short sentence] in the hope of gaining a lot [credibility in the eyes of the jury for his necessity defense on the more serious gun charge]." Even assuming this to be true, and although such a strategy might have been reasonable in the circumstances, our cases make clear that the "defendant's theory of his case cannot relieve the Commonwealth of its burden of proving every element of a crime beyond a reasonable doubt." *Charles, supra* at 383, quoting from *Commonwealth* v. *Shea*, 398 Mass. 264, 269 (1986). "[B]y giving the defendant the benefit of the harmless beyond a reasonable doubt standard, as we have, 'the defendant is effectively in the same position as if he *had* objected to the admission of the drug certificates.' " *Charles, supra,* quoting from *Vasquez*, 456 Mass. at 368. Ultimately, the Commonwealth must show that admissible evidence independent of the certificates overwhelmingly proves the nature of the charged substances.

The dissent also argues that the defendant's concession amounted to a "stipulation," which relieved the government of its burden of proving the composition of the charged substances by lawfully admitted evidence. In conducting harmless error analysis under *Melendez-Diaz*, our courts have often noted that

---

[8]Contrary to the position taken by the dissent, we consider our ruling in *Mendes*, that it is inappropriate to consider the defendant's admissions at trial, as central to our holding there and controlling of the outcome here.

the Commonwealth retains the burden of proving each element of a crime charged absent a "stipulation." See, e.g., *Commonwealth v. Muniz*, 456 Mass. 166, 173 n.7 (2010); *Vasquez, supra* at 367-368, citing *Melendez-Diaz*, 129 S. Ct. at 2542. Although our cases do not precisely delimit what constitutes a "stipulation" in this context, the Supreme Judicial Court has held that the government retains its burden of proof in a drug case where a defendant does not specifically "stipulate to the *composition* of the substances" (emphasis supplied). *Charles*, 456 Mass. at 383 (rejecting the argument that defense counsel may "tacitly stipulate[]" to the nature of a substance by repeatedly referring to it as "cocaine" at trial). Here, as in *Charles*, counsel's representation that the defendant was "conced[ing] . . . possession of the cocaine" fails to stipulate to, or even specifically address, the composition of the substance. We, therefore, decline to treat it as relieving the Commonwealth of its burden on this element.[9]

*Conclusion.* For the foregoing reasons, we reverse the judg-

---

[9] We note additionally that defense counsel's oral concession — made without a colloquy, at the end of trial, and in the face of powerful evidence that was unlawfully admitted — bears little resemblance to the archetypal stipulation under our law. The Massachusetts Rules of Criminal Procedure contemplate that factual stipulations in criminal trials will be the product of negotiation and agreement prior to trial. See Mass.R.Crim.P. 11(a)(1)(C), as appearing in 442 Mass. 1509 (2004) ("Among those issues to be discussed at the pretrial conference are . . . [iv] whether issues of fact can be resolved by stipulation"). Moreover, such agreements are ordinarily entered into by the parties in a signed writing. See *Commonwealth v. Walorz*, 79 Mass. App. Ct. 132, 134-135 (2011) (holding that a written statement of evidence, produced by the Commonwealth and signed by the defendant prior to trial, was a valid stipulation for purposes of *Melendez-Diaz*). In cases where "controvertible facts are agreed to by stipulation, those facts no longer are at issue and must be accepted by the fact finder." *Commonwealth v. Triplett*, 398 Mass. 561, 570 (1986). Given this preclusive effect, a trial judge must conduct a colloquy as to the constitutional rights waived when a defendant agrees to a trial on stipulated evidence. See *Commonwealth v. Castillo*, 66 Mass. App. Ct. 34, 37 (2006) (observing that by stipulating to evidence, a defendant surrenders a number of rights "including the right to confrontation [and] the right to cross-examine witnesses"). The requirement that a colloquy be conducted is particularly important where "a defendant stipulates the truth of facts that are conclusive of guilt." *Commonwealth v. Brown*, 55 Mass. App. Ct. 440, 448 (2002), quoting from *Commonwealth v. Hill*, 20 Mass. App. Ct. 130, 132 (1985). In such cases a defendant "in effect relinquishes the same rights as one who pleads guilty" and "is entitled to the same safeguards that surround the acceptance of a guilty plea." *Brown, supra*, quoting from *Hill, supra*.

ment on the indictment charging possession of cocaine, set aside the verdict, and remand the case to the Superior Court for further proceedings. The judgment on the indictment charging unlawful possession of a firearm is affirmed.

*So ordered.*

GRASSO, J. (concurring in part and dissenting in part). Where the majority and I disagree is in the interpretation and application of the harmless error standard to the defendant's conviction of cocaine possession. See *Commonwealth* v. *Vasquez*, 456 Mass. 350, 355-360 (2010). I would affirm that conviction because the defendant's concession that the substance was cocaine and his agreement that the jury should be so instructed rendered admission of the certificates of drug analysis harmless beyond a reasonable doubt. Indeed, as the case was conceived, tried, argued, and instructed, there was no "reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman* v. *California*, 386 U.S. 18, 23 (1967), quoting from *Fahy* v. *Connecticut*, 375 U.S. 85, 86-87 (1963). To posit, as the majority does, that we must ignore the defendant's concession because it may have been induced by the erroneous admission of the certificates of analysis or because it did not form part of the Commonwealth's case ignores what transpired at trial and, even more significantly, misconstrues the *Chapman* standard for determining harmless error.

The defendant was charged with an enhanced firearm offense under G. L. c. 269, § 10G(*c*), and possession of cocaine in violation of G. L. c. 94C, § 34. Faced with a lengthy sentence (not less than fifteen nor more than twenty years) if convicted of the enhanced firearm charge and a significantly lesser sentence (not more than one year) upon conviction of cocaine possession,[1] the defendant's obvious trial strategy was to give a little in the hope of gaining a lot. The defendant offered up his conces-

---

[1]After the jury returned their verdicts, the defendant pleaded guilty to a lesser firearm charge enhancement under G. L. c. 269, § 10G(*a*), and received a sentence of not less than eight nor more than ten years on the firearm offense, and one year in the house of correction, concurrent, on the drug offense.

sion to cocaine possession in the hope that the jury would look more favorably upon the credibility of his necessity defense.

Opening statement, closing argument, and the testimony of the defendant himself readily acknowledged that the substance in the defendant's sock was cocaine and that the handgun was an operable firearm. Counsel emphasized that the defendant was not charged with firing or assaulting anyone with the gun. He was charged with possession; and he had picked up the gun only out of necessity in chaotic circumstances to prevent someone else from using it. As for the cocaine, in his opening defense counsel stated, "He is not charged with selling it, distributing it, intending anyone else to have it." Counsel's lone reference to the cocaine in closing argument occurred in discussion of the necessity defense.[2]

At the conclusion of the arguments,[3] the judge commented upon the defendant's concessions and asked, "[W]hat do you want me to instruct the jury? Do you want me to go through the whole instruction or simply focus on the issue you raised and that is necessity?" Defense counsel requested a moment to speak with the defendant and, after doing so, he reported to the judge, "[W]e would ask that your focus be on the necessity. . . . [The defendant] concedes both possession of the gun, as well as the possession of the cocaine."

. The judge responded that he intended to read the elements of both offenses to the jury, but then instruct them that the parties had agreed that those were "not an issue" and that "the issue is simply necessity, for both the drugs and the firearm." Defense counsel expressed the defendant's agreement with that approach. . As pertinent here, the judge then instructed the jury regarding the necessary elements of the cocaine charge — including proof that the substance was a class B controlled substance, cocaine.[4] The judge added, "And, like with the charge with respect to

---

[2]Counsel stated, "And he admits to you on the stand he had cocaine in his sock."

[3]The prosecutor's closing argument made no mention of the certificates of drug analysis. His sole reference to the cocaine asserted that "you heard about the cocaine that was in [the defendant's] sock."

[4]The judge's instructions did not link the defendant's possession of cocaine to the defense of necessity as it had with the gun charge.

possession of the firearm, the parties have agreed that the Commonwealth has satisfied the three elements with respect to possession of cocaine. The parties have agreed that the Commonwealth has proven each and every element beyond a reasonable doubt." At the conclusion of the instructions, defense counsel indicated that "The defendant is satisfied."

In these circumstances, where the defendant agreed that the substance was cocaine and that the jury should be so instructed, I find it inconceivable that the erroneously admitted certificates of analysis had *any* effect on the verdict.[5] How could it, when the judge's instruction removed this determination from the jury's purview? See *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997) ("We presume that a jury follow all instructions given to it"); *Commonwealth* v. *Vallejo*, 455 Mass. 72, 84 (2009).

In my view, the majority adds needlessly to the confusing array of post-*Melendez-Diaz* cases that consider whether harmless error analysis looks only to the evidence in the Commonwealth's case, see *Commonwealth* v. *Charles*, 456 Mass. 378, 382-383 (2010), *Commonwealth* v. *Mendes*, 78 Mass. App. Ct. 474, 480-482 (2010), or looks as it should to the totality of the record evidence. See *Commonwealth* v. *Tyree*, 455 Mass. 676, 701 (2010) ("[O]n the totality of the record before [it], weighing the properly admitted and the improperly admitted evidence together, [the court is] satisfied beyond a reasonable doubt that the tainted evidence did not have an effect on the jury and did not contribute to the jury's verdicts"); *Commonwealth* v. *Mendes*, *supra* at 484-491 (Berry, J., dissenting). Indeed, to the extent that the majority relies upon dictum in *Mendes* that it is not "appropriate" to take into account evidence admitted during the defendant's case, I respectfully submit that both the majority and *Mendes* are incorrect in that regard.[6] See *Commonwealth* v. *Mendes*, *supra* at 480.

The standard for harmless error analysis of violations of the

---

[5]The judge's instructions neither referenced nor instructed the jury regarding the prima facie effect of the certificates of analysis. See G. L. c. 22C, § 39.

[6]Because *Mendes* concluded that the error in admission of the certificates was not harmless even after taking the defendant's testimony into consideration, its pronouncement regarding the inappropriateness of considering that evidence may well be viewed as unnecessary to its holding. See 78 Mass. App. Ct. at 482.

Sixth Amendment to the United States Constitution is grounded in Federal law, not in the Massachusetts Declaration of Rights or common law. See *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2531-2532 (2009). "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman* v. *California*, 386 U.S. at 23, quoting from *Fahy* v. *Connecticut*, 375 U.S. at 86-87. We are, of course, bound by decisions of the United States Supreme Court on questions of Federal law. See *Commonwealth* v. *Masskow*, 362 Mass. 662, 667 (1972). In *Commonwealth* v. *Morales*, 76 Mass. App. Ct. 663, 666 (2010), we reiterated that notwithstanding differences in expression, "*Chapman* remains the touchstone for harmless error analysis." Although the Supreme Judicial Court has stated the harmless error standard in several ways, all the varying articulations set forth in the cases cite and rely on the *Chapman* standard. See *id.* at 666-667. "Accordingly, in determining whether a constitutional error was harmless, we ask 'whether the record establishes "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " *Id.* at 667, quoting from *Commonwealth* v. *Peixoto*, 430 Mass. 654, 660 (2000). In answering this question, we consider the totality of the record and the various factors discussed by the Supreme Judicial Court in *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-697 (1983), including "the relationship between the evidence and the premise of the defense." *Id.* at 696. See *Commonwealth* v. *Rosario*, 430 Mass. 505, 511 n.6 (1999); *Commonwealth* v. *Westbrooks*, 79 Mass. App. Ct. 417, 421 (2011). "Our review looks 'to the basis on which "the [fact finder] *actually rested* its verdict." ' " *Commonwealth* v. *Vasquez*, 456 Mass. at 360-361, quoting from *Sullivan* v. *Louisiana*, 508 U.S. 275, 279 (1993).

The defendant does not argue that his concession was not made intelligently or voluntarily or that his attorney rendered ineffective assistance of counsel.[7] His sole claim is that the erroneous admission of the certificates was not harmless beyond a reasonable doubt. Measured against the *Chapman* standard, the

---

[7]While the strategic reasons for the concession appear transparent, we need not resolve whether defense counsel's performance in that regard provides the basis for a claim of ineffective assistance of counsel.

certificates had no effect on the jury or on their verdict because the defendant's concession and the instruction that the parties agreed that the substance was cocaine removed that factual determination from the jury. There is no reasonable possibility that the evidence complained of might have contributed to the conviction. See *Commonwealth* v. *Tyree*, 455 Mass. at 701.

Finally, I address the majority's suggestion that the defendant's concession — whether characterized as concession, stipulation, or functional equivalent — is somehow deficient because it was not reduced to a written stipulation or made the subject of a colloquy. See *Melendez-Diaz*, 129 S. Ct. at 2542 ("Defense attorneys and their clients will often stipulate to the nature of the substance in the ordinary drug case"). Occurring when and as it did, the defendant's concession does not raise the same concerns of waiver or surrender of rights to confront and cross-examine witnesses as arise prior to trial. Contrast *Commonwealth* v. *Castillo*, 66 Mass. App. Ct. 34, 37 (2006) (trial on stipulated facts not constitutionally capable of supporting conviction absent colloquy regarding constitutional rights waived). The defendant had already confronted and cross-examined the witnesses against him, presented his own case, and argued to the jury. In response to the judge's question, the defendant and his attorney discussed the matter, and counsel reported the defendant's wishes to the judge. At that juncture, I would not require the judge to interpose himself between the defendant and his counsel regarding the basis for, or consequences of, the defendant's concession.