NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-298

COMMONWEALTH

vs.

MICHAEL D. THOMAS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

At about 7 P.M., on December 12, 2017, the defendant rubbed his body against two women who were waiting in line to make purchases at a convenience store in Boston. He followed one of the women out of the store and made comments to her. Complaints charged him with two counts of indecent assault and battery (G. L. c. 265, § 13H) and two amended counts of threatening to commit a crime (G. L. c. 275, § 2). A jury convicted him of one count of indecent assault and battery. We discern in the defendant's various claims of error no cause to disturb the judgment, and affirm.

Background. Evidence before the jury included surveillance video from the convenience store as well as the testimony of one victim and three police officers. The victim testified that she and her coworker went into the convenience store and waited in

line at the cashier. A man walked behind the victim and "rubbed up against" her. "His genital area touched [her] rear bottom." The victim moved away, told him to "back up" and said, "[W]ho are you?" She was "shocked" and "caught off guard." The man then stepped behind the victim's coworker (who did not testify) and "rubbed up against" her in the same way. The man then walked behind the victim again and "rubbed up against" her for a second time. The entirety of the interaction was only "somewhat" visible from the surveillance camera angle.

After being touched a second time, the victim felt "violated" and wanted to leave "right away." The women left the store together, and the man followed them outside "saying things" to them. He followed the victim as she started to walk home, and he told her that he was "coming home with [her] to fuck the shit out of [her]." The victim told him to stop, called out to her coworker, and ran. He chased her down the street and pulled up his shirt. The victim caught up to her coworker, who flagged down a police officer heading to another call. Both women then went to the police department, where they spoke with officers.

Moments later, officers responded to the store and saw the defendant, who matched the description provided. Officers attempted to speak with him, but he was uncooperative, belligerent, argumentative, and intoxicated. Eventually, the

2

defendant provided his name and date of birth.  The defendant denied knowing why the police wanted to speak with him, and officers did not arrest him.

Following the defendant's conviction, he appealed.  Those proceedings were stayed by this court while the defendant filed a motion for a new trial raising numerous claims directed primarily at the conduct of trial counsel.  The trial judge held an evidentiary hearing, which included the testimony of trial counsel, and denied the motion.  This appeal, consolidated with his direct appeal, followed.

Discussion.  1.  Ineffective assistance of counsel.  When claiming ineffective assistance of counsel, the defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel'" mandated by law and must also show "that counsel's errors were so serious as to deprive the defendant of a fair trial."  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Merely suggesting alternative courses of action is inadequate to prove ineffective assistance.  Instead, the defendant must show that there "has been serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the

defendant of an otherwise available, substantial ground of defence."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

a.  Conceding guilt in the closing argument.  The record does not support the defendant's contention that counsel conceded guilt in his closing argument.  Instead, the record shows that counsel offered a non-criminal explanation for the evidence before the jury.  The surveillance video clearly showed the defendant's bizarre movements behind two different women, and the testimony of one of those women showed that the defendant "rubbed up against" both women and "rubbed up against" her for a second time.  Given this evidence, counsel conceded that the convenience store was not "an appropriate place" for the defendant's behavior, and he conceded that the behavior in such a place may have been "inappropriate, annoying and possibly even offensive."  He argued that the "lighthearted conversation" seen on the surveillance video between the defendant and the victim's coworker showed that he was being flirtatious as if in a crowded bar, but such conduct was "not a crime."  He suggested that the alleged contact arose not from the defendant's "private part," but from the defendant's waist length winter jacket "brush[ing]" against the victim.

By conceding that the defendant's behavior was not "acceptable" or "appropriate" in a convenience store (as opposed to a crowded bar), counsel drew the perfectly rational and

4

significant distinction between "horse playing" and criminal conduct. When, as here, the victim's testimony tends to be corroborated by surveillance video, a rational concession before a jury is a strategic decision that is "securely within the realm of effective representation" (citation omitted). Commonwealth v. Bonnett, 472 Mass. 827, 833 (2015). Such a concession is commonly deployed "as part of a litigation strategy to boost [the defendant's] credibility with that jury." Commonwealth v. Ramsey, 466 Mass. 489, 496 n.8 (2013). We discern no error with the motion judge's conclusion that counsel's argument was not "manifestly unreasonable" in these circumstances. See Bonnett, 472 Mass. at 833.

b. <u>Withdrawing a request for a lesser included offense instruction</u>. Counsel faced another strategic decision when the judge asked about providing an instruction on the lesser included offense of assault and battery. Following a sidebar conference, the prosecutor declined to request the instruction, and defense counsel requested the instruction. After defense counsel later announced, "My client just changed his mind about the lesser included," the judge did not provide the instruction. The defendant contends that counsel should have requested the instruction because without the lesser included option the jury "did not have a means of holding the [d]efendant accountable for the criminal conduct that was conceded during the closing

argument."  We disagree with the premise that at the time of the jury instruction jurors were looking to hold the defendant "accountable" for something.  That view may be true in hindsight with the benefit of knowing the verdict, but when assessing attorney performance at trial, "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.  At the time counsel declined the instruction, there was a possibility of an acquittal on all the charges -- as counsel put it in his testimony at the hearing on the new trial motion, he discussed with the defendant the possibility of a "clean sweep" or a "homerun" that might result without the lesser included instruction.  The defendant told him, "[L]et's go for the homerun."  The motion judge clearly credited this account (also referenced in counsel's affidavit). We give "special deference" to this factual finding by the motion judge, who was also the trial judge, and discern no error.  Commonwealth v. Tinsley, 487 Mass. 380, 385 (2021).

c.  Failing to object to testimony about the defendant's statement to the police.  The defendant next contends that he invoked his right to remain silent, and counsel should have objected to testimony about his brief remarks to the police. Responding officers testified that the defendant initially "refused to talk," and presented as uncooperative, belligerent,

6

intoxicated, and argumentative, but eventually provided his name and date of birth. He also denied knowing why the police wanted to speak with him. The motion judge rejected the defendant's claim because the record did not show an invocation of the right to silence, and counsel strategically chose not to object to this evidence. We need not unpack the meaning of the defendant's refusal because the strategy professed by counsel and credited by the judge is sufficient to resolve this claim. If the defendant's brief remarks had been excluded, the jury would have heard that he appeared belligerent, uncooperative, and intoxicated without any context. As counsel asserted at the hearing, the defendant's brief remarks provided context by countering this evidence and showing that the defendant did not flee, was in fact cooperative, had "nothing to hide," and "had done nothing wrong" to merit police scrutiny. This evidence also enabled counsel to suggest in his closing argument that the complaints lacked any basis because the defendant spoke to the police at the scene, but they never arrested him. Counsel's judgment represented a "quintessential strategic choice" that we cannot say was manifestly unreasonable. Commonwealth v. Hudson, 446 Mass. 709, 720 (2006). Therefore, we discern no error in the denial of this claim.

d. Failing to object to hearsay evidence. We also see no error in the absence of an objection to testimony by one officer

about the procedural steps taken in the investigation.  One of the officers testified that he left the scene, spoke to the "two women," and notified a "member of the sexual assault unit."  The defendant contends that counsel should have objected because the testimony constituted hearsay, violated the defendant's right to confront the coworker who did not testify, and corroborated the testimony of the victim.  We disagree.

An objection would have been unsuccessful because testimony about these investigative steps was entirely proper and did not constitute hearsay, implicate confrontation rights, or corroborate the victim's testimony.  See Commonwealth v. Arana, 453 Mass. 214, 227 (2009) ("circumstances, and timing, of police involvement in the [sexual assault] case was relevant and admissible"); Commonwealth v. Cohen, 412 Mass. 375, 393 (1992), quoting McCormick on Evidence § 249, at 734 (3d ed. 1984) ("investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct").  Evidence of investigative steps was also "an integral piece of the Commonwealth's response to the defendant's theory" that the police failed to fully investigate the case.  Arana, 453 Mass. at 227.  Additionally, jurors "hardly would be surprised to learn that the investigation that the police conducted in the case before them was of a sexual assault."  Commonwealth v.

8

Condon, 99 Mass. App. Ct. 27, 38 (2020).  As the judge properly concluded, counsel cannot be deemed ineffective where an objection to the admission of evidence would likely have been overruled.  See Saferian, 366 Mass. at 96.

    e.  Failing to object to inflammatory remarks in the prosecutor's closing argument.  The defendant next contends that counsel failed to object to two inflammatory remarks in the prosecutor's closing argument.  In the first remark, the prosecutor asked if the defendant was "to be commended because he didn't finish and attack her on the street?"  In the second remark, the prosecutor referred to the defendant's conduct as "objectification" of women and asked, "How monstrous is that?"  On review of this issue in the motion for a new trial, the trial judge concluded that neither remark, taken in context, was objectionable.  We discern no error.

    Both remarks require some context.  The remark about commending the defendant was expressly a response to defense counsel's arguing that the defendant "called off his pursuit" of the victim.  The prosecutor said, "Counsel would have you believe [that] he stopped."  Her point was clearly that the defendant did not merely call off the pursuit on his own -- he chased the victim down the street and gave up the chase only when she fled and called to her friend.  As the prosecutor said, "One would hope that [he] would stop" in these circumstances and

9

not expect a commendation.  That was a fair argument based upon the evidence and counsel's argument.

The second remark used a somewhat archaic word, "monstrous," which is synonymous with "outrageous."  Calling a defendant a "monster" is not permitted, but the prosecutor did not do that.  See, e.g., Commonwealth v. Bois, 476 Mass. 15, 34 (2016) (error to refer to defendant as "monster[ ] that come[s] out in the night"); Commonwealth v. Rosario, 430 Mass. 505, 515 (1999) (calling defendant monster was "wholly inappropriate and should not have occurred").  Here, the prosecutor noted the "objectification" of women and asked, "How monstrous is that?"  We agree with the judge, who heard the argument, that the clear intent was to emphasize how outrageously wrong and dehumanizing it is to treat persons as objects.  Given the context of the remarks, we do not believe the prosecutor conveyed that the defendant was a monster.  Even if jurors, who saw the surveillance video for themselves, took the remark in that way, the verdicts show that they were not swept by an inflammatory and emotional appeal to convict.  Where the judge concluded that the closing argument was proper, we agree that counsel cannot be said to be ineffective for not making a futile objection.

f.  Failing to advise the defendant of sentencing options.
The defendant also claims that his decision to go to trial was tainted by counsel's inadequate advice about sentencing options

10

following a change of plea.  To prevail on an ineffective assistance claim in these circumstances, the defendant must show a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Commonwealth v. Mahar, 442 Mass. 11, 15 (2004), quoting Strickland, 466 U.S. at 694.  "In particular, the defendant must demonstrate a reasonable probability that the prosecution would have made an offer, that the defendant would have accepted it, and that the court would have approved it."  Commonwealth v. Marinho, 464 Mass. 115, 129 (2013).  Accord Lafler v. Cooper, 566 U.S. 156, 164 (2012).  We discern no error in the denial of this claim.

The defendant contends that he opted to go to trial because counsel failed to advise him that a plea could provide sentencing "options" that would not include sex offender registration.  The main problem with this argument is that the defendant did not have the range of options that he now suggests.  As the judge found after the hearing on the motion for a new trial, the options were very limited.  The prosecutor rejected a charge concession on the two indecent assault and battery counts (implicating the sex offender registration component), the defendant told counsel that he would not agree to supervised probation (impliedly necessary for an agreed disposition), and the judge believed it was "highly unlikely"

11

that she would have agreed to a defense request for a continuance without a finding. Given these facts found by the judge, the defendant cannot demonstrate a reasonable probability that "the prosecution would have made an offer, that the defendant would have accepted it, and that the court would have approved it." Marinho, 464 Mass. at 129. Nor is there any proof that an unagreed plea tender would have been accepted. In his brief, the defendant suggests various sentencing possibilities short of trial, but these scenarios amount to mere "conjecture or speculation" that cannot support an ineffective assistance of counsel claim (citation omitted). Id.

2. Jury instruction on credibility of witnesses. Finally, we review the defendant's claim raised for the first time that the judge provided an improper jury instruction on witness credibility. We discern no error and no "substantial risk of a miscarriage of justice." Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967).

The defendant contends that the judge "improperly modified" the standard instruction on credibility of witnesses by adding, "Innocent mistakes of memory do happen. Sometimes people forget things, or they get confused, or they remember an event differently." "[A] trial judge is not constrained to use any particular language in his [or her] instructions; rather, [the judge] is required only to provide a full and accurate

12

explanation of the governing law applicable to a particular case."  Commonwealth v. Berrio, 43 Mass. App. Ct. 836, 838 (1997).  A judge has discretion "to choose the form of expression best adapted to make the law intelligible to the jurors."  Commonwealth v. Silva, 388 Mass. 495, 507 (1983).  The judge here provided a lengthy instruction to jurors on evaluating witness credibility.  That instruction told jurors to draw upon their "common sense" and "experience of life" and to consider a witness's possible bias or motive, appearance, demeanor, opportunity to observe, intelligence, accuracy of memory, and inconsistent statements.  The judge's instruction, as a whole, accurately conveyed to jurors their role in assessing witness credibility and "neither misstated the case law nor prevented the jury from considering omissions as inconsistencies."  Commonwealth v. Bruce, 61 Mass. App. Ct. 474, 484 (2004).  As such, we discern no error and no "substantial

13

risk of a miscarriage of justice."  Freeman, 352 Mass. at 563-564.

Based upon the foregoing, we are satisfied that none of the defendant's claimed errors, alone or in combination, merit a new trial.

Judgment affirmed.

Order denying motion for new trial affirmed.

By the Court (Green, C.J., Ditkoff & Hodgens, JJ.[1]),

*Joseph F. Stanton*

Clerk

Entered:  September 12, 2023.

---

[1] The panelists are listed in order of seniority.