NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1123

COMMONWEALTH

vs.

KEVIN D. STACEY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant, Kevin Stacey, was convicted of negligent operation of a motor vehicle and operating a motor vehicle while under the influence of drugs (OUI).  After a bench trial, the defendant was convicted of OUI, third offense.  He appeals, claiming that the statements he made to a State trooper "about using fentanyl and oxycontin should have been suppressed because they were made involuntarily," and therefore their admission violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.  We affirm.

Background.  1.  Motion to suppress.  The defendant filed a motion to suppress all statements he made to the police alleging that they were involuntary.  After a hearing, the motion judge found the following facts.  State police Trooper Daniel Mahoney responded to the crash.  Upon arrival, he saw a truck with "heavy front end damage" and "damage to a tree, hydrant, and a downed light pole."  He spoke with the defendant and the passenger of the truck to check them "for medical needs."  The passenger "indicated [that] the defendant . . . was the operator of the [truck]."

Mahoney saw that the defendant was "on 'the nod' (going in and out of consciousness and had dilated pupils)," and asked the defendant questions to "determine [his] medical condition."  The defendant told Mahoney "that he had been taking fentanyl and Oxycontin," and had been using drugs for four years.  The defendant continued "nodding out" and a "paramedic asked the defendant to wake up or they would have to give him 'Narcan,'" after this he "came back and started talking again."  The defendant was then transported to the hospital.

The motion judge denied the motion concluding that "all inquiries at the scene were investigatory in nature and the voluntariness is not an issue since all questions were also based on assessing the defendant's medical condition."

2

2.  The trial.  The jury could have found the following facts.  On October 21, 2016, a witness called 911 reporting that a truck drove through an intersection and "off the road." Mahoney responded to the scene and saw a truck with heavy damage to the front and passenger's side, a downed light pole, and a damaged fire hydrant and tree.  Mahoney approached two men sitting on the sidewalk and learned that the defendant was the driver of the truck.

Mahoney asked the defendant how the crash happened, and he replied that he did not know.  Mahoney also asked the defendant if he had taken any drugs that night, and the defendant said that he had used "OCs[1] and fentanyl."  The defendant explained that he had been using drugs for the last four days because his dog died.  During the conversation, the defendant "would go in and out of consciousness for a period of a few seconds, then come back and start the conversation again."  In addition, the defendant's "eyes were quite small, constricted, tiny pinpricks."[2]

---

[1] Mahoney testified that, to his understanding, OCs refer to Oxycontin.

[2] Mahoney testified that he "used the wrong word" in his police report when he wrote "dilated."

Paramedics arrived and the defendant told them that he had taken oxycodone[3] before driving.  The defendant was then transported to the hospital.  The hospital records include the defendant's statement that he "did take [o]xycodone . . . and did consume alcohol earlier in the evening."  The defendant was discharged later that night.

Discussion.  The defendant claims that the motion judge erred in denying the motion to suppress without deciding whether the defendant's statements were voluntary.  We need not address whether the defendant's statements were voluntary, however, because we conclude that there was ample evidence apart from these statements from which the jury could have found that the defendant's ability safety to operate a vehicle was impaired by drugs.  See Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 389 (2017) ("in view of the whole case, the prejudice flowing from [the inadmissible opinion] would be relatively modest given what must have been obvious to the jury").  Therefore, any error was harmless beyond a reasonable doubt.  See Commonwealth v. Watt, 484 Mass. 742, 751 (2020), S.C., 493 Mass. 322 (2024).

"An error may be considered harmless when other properly admitted evidence of guilt is so 'overwhelming' as to nullify

---

[3] "[O]xycodone . . . is an ingredient in the brand name drug[] . . . Oxycontin." Commonwealth v. Podgurski, 81 Mass. App. Ct. 175, 175 n.1 (2012).

4

any effect that the improperly introduced evidence might have had on the outcome" (citation omitted).  Commonwealth v. Ramsey, 466 Mass. 489, 494 (2013).  In evaluating whether the admission of evidence was harmless beyond a reasonable doubt,

> "we examine factors such as 'the importance of the evidence in the prosecution's case; the relationship between the evidence and the premise of the defense; who introduced the issue at trial; the frequency of the reference; whether the erroneously admitted evidence was merely cumulative of properly admitted evidence; the availability or effect of curative instructions; and the weight or quantum of evidence of guilt.'"

Id., quoting Commonwealth v. Mendes, 463 Mass. 353, 359 (2012).

"To prove the crime of [OUI] . . . , the Commonwealth was required to establish that the defendant (1) physically operated a vehicle; (2) on a public way; (3) while under the influence of a narcotic drug."  Commonwealth v. Bouley, 93 Mass. App. Ct. 709, 712 (2018).  "[T]he phrase 'under the influence' refers to impairment, . . . [t]hus, 'in a prosecution for [OUI], the Commonwealth must prove beyond a reasonable doubt that the defendant's consumption of [a narcotic drug] diminished the defendant's ability to operate a motor vehicle safely."  Commonwealth v. Veronneau, 90 Mass. App. Ct. 477, 479 (2016), quoting Commonwealth v. Connolly, 394 Mass. 169, 173 (1985).  Regardless of whether the defendant's statements were properly admitted, the evidence was sufficient to support the jury's

5

conclusion that the defendant's intoxication impaired his ability to safely operate his truck.

The defendant argues that the admission of his statements was not harmless beyond a reasonable doubt because they were the only evidence that he used fentanyl. However, the Commonwealth did not rely solely on these statements to prove beyond a reasonable doubt that the defendant was under the influence. The evidence included the defendant's statements to the paramedic that he had taken oxycodone before the crash, and these statements were also contained in the hospital records admitted at trial.

The jury also heard the testimony of police officer Jason Callinan, who in addition is a registered nurse and paramedic. Callinan described the common side effects of taking oxycodone. Callinan testified that oxycodone can "make your pupils really tiny or constricted," and can cause drowsiness. This testimony was consistent with the paramedic's records that note that the defendant had "pinpoint pupils," as well as with the hospital records that state that he was drowsy. Additionally, Mahoney testified that the defendant was "going in and out of consciousness." A jury could reasonably infer from these signs of intoxication that the defendant had an impaired capacity to operate a vehicle safely due to taking oxycodone. See, e.g., Bouley, 93 Mass. App. Ct. at 712-713 (evidence that defendant

6

was unconscious at scene, responded to Narcan, admitted to using fentanyl, and hit fire call box with truck was sufficient for jury to infer amount of fentanyl taken impaired his capacity to operate car safely).

Finally, the jury heard testimony that the defendant drove off the road and hit a light pole, a fire hydrant, and a tree. When asked how the crash happened, the defendant did not know. A jury may infer impairment by an "intoxicating substance" from "the manner in which the accident occurred, and the defendant's conduct just prior to and immediately after the collision." Commonwealth v. Reynolds, 67 Mass. App. Ct. 215, 219 (2006).

Viewed in its totality, the evidence was sufficient for the jury to conclude that the Commonwealth had met its burden of proving the elements of the crimes even without the defendant's statements, and we are satisfied that his statements did not affect the verdicts.  See Ramsey, 466 Mass. at 494.

Judgments affirmed.

By the Court (Blake, C.J., Hand & Toone, JJ.[4]),

Clerk

Entered: January 29, 2026.

---

[4] The panelists are listed in order of seniority.

7